| | |
|---|---|
| **Charles Mitchell Jr,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| **Rent-A-Center, Inc.** ) | |
| **Equifax Information Services, LLC,** ) | |
| ) | |
| **Defendants.** ) | |

THIS MATTER is before the Court on Defendant RAC Acceptance East, LLC d/b/a/ Acceptance Now, East, LLC's ("Defendant RAC") Motion to Compel Arbitration and Dismiss (Doc. No. 7) and Plaintiff's Notice of Settlement with Defendant Equifax Information Services, LLC ("Defendant Equifax"). (Doc. No. 9). Having carefully considered the motion, memoranda, and the record, the Court GRANTS IN PART Defendant RAC's Motion and STAYS this case.

**I.   BACKGROUND**

Plaintiff commenced the instant case on March 15, 2020, seeking damages from Defendants for various violations of the Fair Credit Reporting Act. (Doc. No. 1). On July 15, 2020, Defendant RAC moved to compel arbitration pursuant to the Federal Arbitration Act, citing its rental agreement with Plaintiff, and dismiss the case. (Doc. No. 7). Plaintiff has not submitted a response to Defendant RAC's Motion, and the time for doing so has expired. However, on July 21, 2020, Plaintiff filed a notice of settlement with Defendant Equifax, seeking a stay of the case as to Defendant Equifax only, pending completion of the settlement agreement. (Doc. No. 9).

With respect to Defendant RAC's Motion to Dismiss and Compel Arbitration, Plaintiff and Defendant entered into two rental agreements: the first on September 12, 2015, and the second on

November 18, 2016. (Doc. No 8, p. 3). Both rental agreements contain an arbitration agreement, which provides, in relevant part:

> (B) **What Claims Are Covered:** You and RAC agree that, in the event of **any dispute or claim between us**, either you or RAC may elect to have that dispute or claim resolved by binding arbitration. This agreement to arbitrate is intended to be interpreted as broadly as the FAA allows. Claims subject to arbitration include, but are not limited to:
> - claims arising under, arising out of, or relating in any way to any Consumer Contract entered into between you and RAC at any time, and/or any services rendered under or that relate to any such Consumer Contract;
> - claims that arose before the execution of this Agreement or any current or prior Consumer Contract between you and RAC, such as claims related to advertising or disclosures;
> - claims that arise after the termination of any Consumer Contract between you and RAC;
> - claims that are based on any legal theory whatsoever, including negligence, breach of contract, tort, fraud, misrepresentation, trespass, the common law, or any statute, regulation or ordinance;
> - except as specified in Paragraph (C) below, claims that are asserted in a lawsuit in court, including class actions in which you are not a member of a certified class, which the defendant (or counterclaim defendant) elects to have resolved by binding arbitration; and
> - except as specified in Paragraph (D) below, any and all disputes relating to the interpretation, applicability, enforceability or formation of this Agreement, including, but not limited to, any contention that all or any part of this agreement to arbitrate is void or voidable.

(Doc. No. 8-1, pp. 8-9, 14-15) (emphasis in original).

## II. STANDARD OF REVIEW

The Federal Arbitration Act, which governs the enforcement of arbitration agreements, "reflects a liberal federal policy favoring arbitration agreements." Adkins v. Labor Ready, Inc., 303 F.3d 496, 500 (4th Cir. 2002). Ambiguities regarding the scope of an arbitration clause are resolved in favor of arbitration. See id. According to Adkins,

> The FAA requires a court to stay "any suit or proceeding" pending arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. This stay-of-litigation provision is mandatory. A district court therefore has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview.

Id. at 499-501.

To compel arbitration, "the court must first find that an arbitration agreement exists between the parties." Hightower v. GMRI, Inc., 272 F.3d 239, 242 (4th Cir. 2001). If so, "the court must then decide whether the dispute at issue falls within the scope of the agreement." Id. In determining the validity of the agreement, courts apply state contract law. See id.; Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 686 (1996). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983). Because federal policy strongly favors arbitration, the burden lies with the party opposing arbitration to demonstrate why arbitration should not be ordered. See Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 227 (1987).

### III. ANALYSIS

Plaintiff has not submitted a responsive motion to Defendant RAC's Motion to Dismiss and Compel Arbitration, and the time for doing so has long since expired. As such, this analysis is limited to the issues of (1) whether an arbitration agreement exists between the parties, and (2) if so, whether the dispute falls within the scope of any such agreement. As to the first issue, the Court finds a valid arbitration agreement exists between the parties. Plaintiff has signed both rental agreements and corresponding arbitration agreements, see (Doc. 8-1, pp. 4, 6, 12, 18), and makes no argument to the contrary. Moreover, "North Carolina law directs [federal courts] to favor arbitration . . . [when] the facts support the conclusion that the parties formed an arbitration agreement." Hightower v. GMRI, Inc., 272 F.3d 239, 242 (4th Cir. 2001). Accordingly, a valid arbitration agreement between Defendant RAC and Plaintiff exists.

3

As to the second issue, "'[t]o decide whether an arbitration agreement encompasses a dispute[,] a court must determine whether the factual allegations underlying the claim are within the scope of the arbitration clause, regardless of the legal label assigned to the claim.'" <u>J.J. Ryan & Sons, Inc., v. Rhone Poulenc Textile, S.A.</u>, 863 F.2d 315, 319 (4th Cir. 1988). Broad statements in arbitration clauses, such as those involving "arising out of or relating to" encompass an expansive range of disputes. <u>See</u> <u>U.S. Sur. Co. v. Hanover R.S. Ltd. P'ship</u>, 543 F. Supp. 2d 492, 495 (W.D.N.C. 2008) ("According to the Fourth Circuit, [b]oth the Supreme Court and this court have characterized similar formulations [of 'arising out of or relating to'] to be broad arbitration clauses capable of extensive reach." (quotation omitted)). The arbitration clause here contains broad language by mandating arbitration for claims "arising out of, or relating in any way to any Consumer Contract entered into between you and RAC." This is sufficiently broad enough to cover Plaintiff's FCRA claim because the dispute is based on Plaintiff's account with Defendant RAC, (Doc. No. 1, p. 5), and Plaintiff does not contend otherwise. Accordingly, the arbitration agreements at issue here encompass the dispute between Plaintiff and Defendant RAC.

### IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendant RAC's Motion to Compel Arbitration and Dismiss (Doc No. 7) is GRANTED IN PART. Plaintiff and Defendant RAC are ORDERED to proceed to arbitration and submit status reports to this Court every ninety (90) days. This matter is hereby STAYED pending the outcome of arbitration between Plaintiff and Defendant RAC, and pending the completion of the settlement agreement between Plaintiff and Defendant Equifax.

IT IS SO ORDERED.

Signed: November 5, 2020

Frank D. Whitney
United States District Judge